Good morning, may it please the court. Ned Parent of Silverman Thompson, Slucken and White in Baltimore on behalf of the appellants officers Gerald Ferreyra and Brian Phillips of the United States Park Police. This is an unusual case in a number of different ways. It's unusual because I believe this is the second time we've actually been in front of this panel in this matter. It is unusual certainly because of facts involved, particularly the participants involved in their various roles. It's also unusual I think in the Bivens context because we're a bit of the way through the looking glass in a sense in that usually in these arguments as we just saw, it is the government as the appellee saying that there's been a finding by the lower court that the Abbasi analysis has gotten rid of a Bivens claim. Here we're on the opposite side where the government has actually had a jury verdict where they have been found liable under a Bivens theory. I do believe under the Abbasi, Hernandez, and Egbert line of cases, even under this context, this Bivens case, this Bivens claim is no longer tenable and the court should reverse the finding of the district court denying our Rule 59 motion. This panel is obviously familiar with the facts of this case. I would like to dispense with a recitation if your honors are okay to get straight to the heart of our case because I do think this rests primarily on the first issue we raised. How long was the trial here? The trial was all in. It was about five days. I think it was about three days of testimony and argument. There was jury selection. We may have let into a fourth day below. It was about a year and a half ago. I do believe it was about two and a half days or three days total. It was three days of testimony and argument. The verdict came back on the fourth day. Jury selection was a prior fifth day. Mr. Parent, when you're making your presentation, if you'll make sure to address the special interrogatories returned by the jury because they are particularly devastating with respect to your defendant. We acknowledge that and certainly the jury is pertinent to the second, third, and fourth arguments we have raised. Qualified immunity, this instruction issue, and the damages issue. I think it's relevant to your Bivens claim too because maybe this was more before but still now. I mean part of the argument is that this implicates park service policy and you have the two agencies and the policy is to call the supervisor and work it out and then the jury comes back and says there is literally no such policy. So we take that out of the Bivens. This does not implicate any official administrative policy of either branch, right? Well, I understand what your point is, Your Honor. I think if I could bring it back to a thousand foot level to address where I think your question is going, especially with regards to the jury issue. On the Abbasi argument, I would actually submit that the jury verdict as far as the court's analysis is somewhat irrelevant here because what I find footnote three in particular of the Egbert majority defined is that this is almost akin to a subject matter jurisdiction issue that can be raised at any time sui sponte because it goes as to whether or not an article three court. I know what you're, I know the part you're talking about. I think they did say, the court did make clear that like you should be prepared to forgive forfeitures. I did not understand them to be saying that this is jurisdictional. And also I'm sort of not sure it matters. Like you have in mind that we could write an opinion saying this is a different context for Bivens purposes because it affects or implicates official policy in light of the fact that the jury just said, no, there is no policy. That would be very odd. Well, it's broader than that. I think if you go toward the judicial guidance aspect, we're going to talk about the new context analysis because yes, this does arise in a fourth amendment context. That's unquestioned, but there are different contours of the fourth amendment that Webster Bivens had the heightened level of expectation of privacy in his own home from a warrantless search and a warrantless seizure versus what happened to agent Hicks in July of 2015, where he is at the side of the road in his vehicle. It's not even his own personal vehicle. It's a government issued vehicle where the expectation of privacy is at the very end of the contours of the guidance within the fourth amendment. This could not be a more meaningful stark difference between the judicial guidance that would be afforded in a situation that affected Webster Bivens versus what was faced by agent Hicks. Okay. Mr. Parent, can you point us to any language in either Bivens or its progeny that say that the degree of intrusion is meaningful because we have in Bivens an unlawful seizure. We have in Hicks an unlawful seizure. What is the authority for saying that a lesser degree of intrusion, that is Hicks being unlawfully detained for over an hour, couldn't get out of his vehicle, they wouldn't let him move while the supervisor was being called. What in our case law says that the degree of intrusion is a meaningful distinction once you have established the illegal detention that is a fourth amendment violation like in Bivens. Sure. I think that one case from this court that may provide some guidance is the Aaron Peretti opinion because this actual, this discussion of the difference part of judicial guidance that would be afforded under the alleged constitutional right that's being asserted, giving rise to the Bivens claim, discusses this. I know that there's a part, I think the pinpoint site is 135 of Aaron Peretti, makes the discussion about how there are going to be similarities in almost every Bivens case, particularly with line-level officers. That was an issue that the district court stressed in its argument. There's going to be line-level officers in almost every Bivens case because that's the level of officers that are having the interaction with civilians whose rights could be impeded. But what matters is not so much the level of the similarities. What matters is whether or not there is a meaningful difference. And we held in that case that a with-warrant search is meaningfully different from what we had in Bivens, which was a warrantless seizure. And that's what we have here. So I don't really see how that case held to. It draws a line, and this case is on the Bivens side of the line that that case draws. I do believe that the difference between home versus car is significant. There is just different expectations of privacy. Aaron Peretti, we were able to cite a lot of literature and cases really emphasizing the fundamental switch that happens in Fourth Amendment cases once you have a warrant. I don't really see anything like that in terms of various expectations of privacy in the warrantless context. I understand, Your Honor, and I don't necessarily disagree with your point. But I do feel that for purposes of the Egbert-Abbasi analysis examining any Bivens case, I can't believe there is a meaningful difference between when you're talking about a litigant who is alleging a Fourth Amendment violation, the difference between whether it's warranted or not, between an event that happened inside their own home with six people blasting in, harassing their family, searching, removing him, taking him down, and strip searching him as if he didn't have enough indignity, versus what happened to Agent Hicks where he's on the side of the road, he's running advance for a motorcade. Agent Hicks does not challenge the initial approach in this case. He does not challenge it at trial. The initial approach from Officer Ferreira that morning was he believed this was a welfare check. He sees a car on the side of the road. It's 6 a.m. on a Saturday morning. He doesn't know what the car is doing there. He goes in. Even the jury agreed in the special interrogatories that Agent Hicks could have appeared asleep to him. There's a gun on the seat. He goes Code 60 because he believes that Agent Hicks is reaching for it because of the confusion involved. He called a supervisor to the scene. And at that point, based on the special interrogatories, everything else is unreasonable. And I do believe the special interrogatories while relevant to the other causes of action with regard to the Abbasi analysis that goes to whether or not there was even a cause of action that should have gotten to the fact finder. We brought a Rule 50 argument. We brought Abbasi up in our Rule 50 argument to Judge Grimm. He allowed it to go to the defendant's case. We raised it again at the end of all evidence. He allowed it to go to the jury. Had the district court applied what we believe was the correct analysis under Abbasi under these circumstances, the jury would have never even heard this case because there is no Bivens case to be heard within an Article III court. I believe that that is where this lay of cases have gone since Abbasi to Hernandez to Egbert. With Abbasi, it was such a new case in terms of Egbert, in terms of Bivens jurisprudence, excuse me, that all the judges in the bar are trying to grapple with what this means. I think the Egbert decision and I think even Justice Gorsuch's concurrence in this case makes very clear that we are to look at these claims that there is a single reason that where Congress should be afforded the right of remedy here rather than the judiciary, then there is no Bivens case. We just handed down our decision in after Egbert. We do the first step. We ask first, is there a meaningful difference that would make this an extension? And if the answer is no, that's it. So I'm not sure that we are governed really by the Justice Gorsuch's concurrence so much as at least this panel is bound by tape. And again, I believe the meaningful difference we have in these facts versus what happened to Bivens versus what happened to Hicks is the difference between home versus car. I do think that's enough. I also want to mention with regard to the special factors, certainly there's two in particular. We mentioned that this is an interagency policy, but I think the alternative remedy is one that also needs mentioning with regard to whether there's a special factor to counsel extension here. And this is something that I don't believe it is in our briefs. It's certainly in the record. And it was something that it's been hiding in plain sight sometime, which I think is Agent Hicks' other cause of action that he raised in his amended complaint. He brought a Bivens action, but he also brought an action under 42 U.S.C. 1985, the conspiracy to interfere with civil rights, specifically 1985-1, which refers to two or more individuals conspiring to impede the work of a government official. And that is specific to the specific facts here. You have an on-duty Secret Service who's running point for a motorcade. The allegation was that Officers Ferreira and Phillips conspired together to prevent him from participating in that motorcade. He brought that in his amended complaint. I think it's in the joint appendix. I think it's at page 28 is where you find it in the amended complaint. You can see his cause of action. It was well-pled under Rule 8. We did not move to dismiss below. We filed an answer that went through discovery, and the district court granted a summary judgment on that count due to there was just no fact supporting that there was an actual conspiracy and any furtherance of it between these two officers. Under the Egbert analysis, if there is an alternate remedy available to a litigant in addition to Bivens, that is sufficient. It doesn't matter whether it's successful on the merits. It doesn't matter whether it gives all the results. It's the availability of that remedy. So even in this record, that other cause of action, which was again available to Agent Hicks and was enacted by Congress, I think is a special factor. Another special factor, and I would like to turn the court's attention to a recent case. It's not in our papers. It just came down a couple of months ago. It's not dispositive here, but I do believe it's instructed. It's Mejia v. Miller, 53-4501. It's a Ninth Circuit case. It came down in November. The situation involved a couple on a UTV vehicle in Joshua Tree National Park's Bureau of Land Management. They got into a dispute. They were trying to speed away. The officer shot, hit the woman. They bring a Bivens case. And one of the things that the court says in finding that the Bivens remedy was unavailable here was because it would create, if they were to find a Bivens remedy under that specific fact pattern, particularly the expectation of privacy was something that court specifically alleged, is that it would create a deluge of new Bivens into new areas. These are two occurrences that occurred on one time between these officers. The first is a welfare check that involved Officer Pereira, where Officer Phillips comes in backup. Then the second part is, in isolation, is a routine Terry stop involving Officer Phillips. I'm not aware of any case since Abbasi, certainly not in this circuit, where this court has found and upheld a Bivens case in a Terry stop or in a welfare check with a car on the side of the road. Okay, but Mr. Parent, does it matter that the jury found that it wasn't a Terry stop by Officer Phillips? As far as the Abbasi argument, I would submit that it does not matter. I don't. Why not? Why not? Because the issue that we're facing is whether or not an article three court, in light of Egbert, could have even heard this case. Is this a viable cause of action, given everything we've just described, that it even shouldn't have gotten to the jury in the first place? Yeah, but I still haven't heard you tell me any authority that talks about a lesser degree of intrusion being a meaningful context that we have to recognize in denying a Bivens remedy. You're talking about how it's different, how it wasn't as egregious. No that talks about the decree of intrusion being lesser is a factor. I don't see it in Abbasi. I don't see it in these other discussions. Well, I'm out of time. If I may answer this question, then I'll reserve the rest of my time. I actually would suggest that this court act turn to the language as it's evolved in Egbert itself, because it does stress that the judicial guidance can be, whether there's different judicial guidance, can create a new context if it is meaningful. If it was a situation that was identical to what happened to Webster Bivens, he's in his home, six ICE officers come in and ransack it. That's one thing. Again, today is a seamless web. The law is amazing. You keep emphasizing six people, they ransacked. I think this just keeps going back to Judge Keenan's question. There's nothing in any of these cases that says we look at how bad it was. I'm not suggesting that you do. But what I'm suggesting is it's not so much the six, it's the home. It's that they went into his home without a warrant versus when he's on the side of the road being approached on a welfare check that goes sideways. And whether there is any guidance here, I just think that that is under these facts and under this progeny of cases, that is enough of a meaningful difference because the amendment rights involved and the privacy rights involved that could give rise to a Bivens claim are completely different. Don't make this argument in district court. Remember, you've been up here once before. We made this argument in our Rule 50 argument, which is in the transcript. We did describe that there was a difference between this being home and car. I'm almost positive that we did. I will look and see if I can find the case where we make that argument. But we made the Abbasi argument during our Rule 50, both at the beginning, at the end of our case, at the end of all evidence. So we do believe it is preserved. Thank you, Your Honors. Good morning, Your Honors. My name is Yiyang Wu, and I represent the Appley Nathaniel Hicks. This is a case about line-level law enforcement agents engaging in routine law enforcement actions that violated a citizen's Fourth Amendment right against unreasonable seizures. The particulars of this case involve actually two separate unlawful incidents. Seizures over one morning, seizures of my client, Nathaniel Hicks, which involved malicious and wanton behavior by the Park Police defendants, where the defendants continuously cursed at him, taunted him, threatened him, held him, even though they knew they had no basis to do so, let him go, only to start over the whole thing again. I'm going to get to Egbert in a moment, but I first just want to make two points. The first is, before this case went to trial, it had the benefit of several comprehensive legal opinions about the core legal issues at stake, including one decision on interlocutory appeal by the Fourth Circuit and several opinions by Judge Grimm as well. And two, with the benefit of that legal framework, the jury rendered a verdict and found on every dimension in favor of Mr. Hicks. Turning to Egbert, Egbert does not affect this case's outcome. Egbert held that Bivens' claims remain cognizable. In Egbert, the Ninth Circuit had acknowledged that the case was an extension of Bivens' because the defendants were Border Patrol agents. It had to do so, given the Supreme Court's prior case law on Border Patrol. But under Egbert, Bivens' replays remain cognizable. And that's what we have here. About what I see is, you've read all the Bivens' cases, right? You know what we're talking about. So if we talk about a different context, we have to have a different context. Okay, so why isn't the home a different context than the car? Your Honor, there are several reasons why the home is not—it is a difference that is not here. First— There's law. Let's just take it out of Bivens' all together. There's law that says that you have the same rights of privacy and protection in the home as you do in the car. The home isn't the sacred place. I thought that that was pretty well established too. Well, Your Honor, the issue, and I think this is one thing that we do agree with here, is that this case has never been about the initial encounter, how you got there. And so the case is, at some point very soon after the initial encounter, the Park Police officers knew they had no basis to hold him anymore, and then they continued to hold him. Whether he was held in that second part, whether he was held in his car or in his home, there is no issue of privacy here. Privacy would only—the considerations of privacy are irrelevant to Mr. Hicks' constitutional claims. And to answer your question, I want to stop on the privacy point because now I'm confused just as a matter of Fourth Amendment law. I think you have different privacy rights in your home and in your car, but that goes to search cases, right? I mean, this is a seizure case. I'm not sure that your seizure rights are different depending on where you're standing. Thank you, Judge Harris. That is what I'm trying to say. In the seizure context, there is no difference in the law between if you are seized, sitting in your home with no basis for doing so versus in your car. If you're in your home, you will also have a search claim because they came into your home. But if your claim is the seizure, it doesn't matter. We'll figure this out. Okay. Judge Harris, you're correct, and I'm sorry if I misconstrued it. There's been a lot of talk, and I know this also has to do with the prior argument about what constitutes a meaningful difference. Let me just go back because I think that's a fair point. But what we're looking at is different context. So maybe it's not a different context. I will take you and especially my colleagues' suggestion that the seizure in the home, that it may be the same, but it is different. I mean, the outcome might be the same, but they are different contexts, aren't they? Your Honor, there is a difference, but it is not meaningful. And if you'll allow me to define what meaningful means here, it actually is meaningful for Bivens purposes. Correct. It is not a meaningful difference for Bivens purposes. Just recently in Tate, the court drew a line, to decide whether or not something is a fact is meaningful under Bivens. It's whether the fact implicates separation of power considerations. That's 54 F. 4th at 846. And that is confirmed if you go back to Abbasi, which of course Abbasi is the ruling precedent on this first analysis, right? Bivens extension versus Bivens replay. And if you look at the six factors, of course, Abbasi doesn't say that this is the exhaustive list of factors, but the six factors that they spell out are informative because if you drill down on them, they tell you why it is meaningful. It's the same idea. These six factors are meaningful because they implicate or they would suggest some sort of additional intrusion by the judiciary into Congress or into the executive. And here, we just don't have that. If we now look at the difference between Mr. Hicks being seized in his home, in his car versus Webster Bivens being seized in his home, there is no separation of power consideration that's implicated there, right? You still have a line. You still have the same line level law enforcement officer. The facts of the case are a normal seizure case that this judiciary is very well-versed to do. You deal with it all the time in 1983 cases. You've also dealt with Fourth Amendment car cases already in the past. There's Schulte, the Interlocutory Appeal Decision, cites that. So the judiciary has and continues to be well positioned to deal with car cases. And more importantly, there is nothing about national security or immigration or anything that would suggest that Congress or the executive branch would be better capable, better suited to deal with a car case. And that is under Tate and under Abbasi, the relevant distinction about what is meaningful. Counsel, do you have a view on what your sort of colleague on the other side is suggesting, which is that for purposes of the Bivens analysis or the Bivens question, we should act as though this jury trial never happened? Because if they are right, it never should have happened. Can we take into account the jury's, I mean, given that it did happen, do we take into account what the jury found? And I'm thinking in particular of the can we take that into account? How do we deal with that? Yes, Your Honor, you absolutely take into account. I mean, I think you would find on this case regardless, but you can take that into account. I think the understanding is, I think this is to suggest as though Egbert has made new law here. No, I think what they're saying is, look, if we're right on Bivens, there never should have been a jury trial. So therefore, you have to answer whether we're right on Bivens without looking at the jury trial. At least that's how I understood the argument. And Your Honor, then they're not right on Bivens. So we'll start with that. I think what you, I've not seen any case law that would suggest that this point in time argument they're making is accurate. They made the argument before you had the jury trial, right? The Bivens argument. The appellants made the argument. Yes. So the procedure posture in this case is a little bit tricky. No, I remember we had once we came back. And it was a waiver issue on appeal, on interlocutory appeal. The court did find as part of their waiver decision, the fundamental, there was no fundamental prejudice to going back to trial on this issue. So it was raised for the first time in interlocutory appeal. We went down, we had a trial, and then it was raised at a Rule 50 motion and again here today. It was not raised in a Why would you have the benefit of the jury's finding? It seems to me that you've got to analyze it in the pretrial context, and then you need to argue burden of proof in terms of establishing Bivens, don't you? Whether this is the Bivens case or not. I've not seen case law, Your Honor, on whether it is a jury consideration of whether, you know, of a Bivens extension. I've not seen that that has to be. But what the jurist is saying, and I think it's a really good point, is if the Bivens argument precludes a trial, which it would if it had gone against you, how can you then bootstrap your case by relying on the jury's findings? Don't you have to go back before there was a trial and argue the facts as they were then known? And if not, why not? Your Honor, I would like to reserve some briefing on this because this was not raised for us. But just so I'm clear, at interlocutory appeal that the issue was raised for the first time and the court found it was not, it was waived. That's not, that was not an issue from the appellee's position, right? And so as it came to us, that wasn't a decision you can never make the argument again, right? Right, right, right. And so here we are making the argument for the, let's make this really concrete. So I actually don't think that your colleague is really pressing this point now. But there was a time, and I think maybe it was when we first had this case, when a case like this implicates official park policy, park police policy. And that's what makes it different from Bivens. We now know there is no policy. So on the one hand, it would strike me as somewhat odd to write an opinion saying that because this implicates non-existent policy, there's no Bivens cause of action. On the other hand, we know that there is no policy for sure. It was always disputed. And, but we now have resolution. We now know that there's no policy only because there was a jury trial. That should not have happened if this is an extension from Bivens. So in truth, like this is just giving me kind of a headache, like watching one of those. I mean, we can answer it this way. If this came up on a motion to dismiss as it could have come, if it came to the motion to dismiss, then your honors would be examining it in the light most favorable to the plaintiff. I do believe that's what Judge Grimm said the first time. Like I, I can't call this a Bivens case based on a thing that there was a very genuine dispute as to whether or not it exists. I think that's right. I don't think that Abbasi was actually in front of Judge Grimm, but I am sure he mentioned policy. I'm sorry. Sorry, I was going to say this. It doesn't matter. Go ahead. So, so if this had come in a motion to dismiss, then your honors would have approached this with the facts most favorable to the plaintiff. The, the fact that a defense from the defendants would not have given rise to you all, to your honors finding, finding that that fact in and of itself could give rise to a Bivens extension. So I think that's actually where we are, you know, very, very far, many steps removed. I think that's where we are here again today. You have, where you, you have to review the factual record in the light most favorable to the plaintiff here. And again, yes, just because the defendants raised a policy that cannot in and of itself make this an inter-agency dispute. I'm sorry, I'm a little slow. I'm not sure where that gets us. If we do it in the light most favorable to you, then we send it back for another trial? No, you, no, your honor. Because you're telling us not to look at what happened at the trial. I apologize. I do not mean to say to not look at the trial. What I'm saying is I think you're in the same posture where if you were to take the defendant's position and not consider the policy, then you would not be looking at this case as the jury had found them as in the light most favorable to the plaintiff. So at this stage, I see no case law saying that you would, you would go back to the facts at summary judgment. I've not seen case law to suggest a time warp that way. And certainly here where we are now, we have facts in front of us, including a policy finding. Your honor, on the inter-agency dispute issue though, just to take a step back on that, there, there is no, this is another situation where appellants have construed the record in a way that favors them and not, not in the way that was actually found. There, there is no agency, inter-agency dispute here. What you have, and they've said this in their oral argument as well, simply comes down to the plaintiff happened to be a law enforcement agent. But as Judge Grimm said in his opinion, officer, Mr. Hicks sued under his ordinary citizen's rights. And the only difference that his employment as a secret service agent made is that it made it more easily and more quickly confirmable that there was nothing that he was When they say inter-agency dispute, what they really, that is a big package word that really means your honors should be considering the identity of the plaintiff as a law enforcement agency, as a law enforcement agent, as an independent reason to find that this case is different from Webster Bivens. And that's just, that's a dangerous, that's a dangerous line of the plaintiff to consider whether or not, you know, the identity of the plaintiff matches that of Webster Bivens. And if we go back to Tate and we go back to Abbasi, it does not make sense. That would not strike a separation of powers consideration, and it would not be a meaningful distinction. I would also say that in that situation, I'm sorry, Judge Motz, I would also say that in that situation, you would have, you would run the risk of having everybody in, everybody other than a federal law enforcement agent plaintiff be able to pursue a Bivens replay case. And so, but for Mr. Hicks being a law enforcement agent, he would be able to pursue it. And so, you would have a situation where somebody, by virtue of their federal employment, would not be given the benefit to pursue a Bivens replay case when everybody else will. And that just, I don't see any support for that in the law. I am happy to go through the other, the other factors of Abbasi. I'm also, you know, happy to, happy to turn to qualified immunity if that's for your honors. This is, this is sort of the thing that is getting me, is that the law was very different when we heard this first time. And so, it was perfectly, I think what we did was entirely appropriate. If the law had been then as it is now, would you still say that we, that it would be appropriate for us to do what we did? Thank you, your honor. Yes, because when you say the law is very different than to now. I'm talking about the Supreme Court. You're talking about Egbert, I think. And Egbert, I just want to reinforce, Egbert cannot speak to the first question in front of us, Bivens replay versus extension question, because the Ninth Circuit there had already acknowledged that it was an extension. So, the majority of Egbert, everything that's cited about, you know, just one factor, it's all about assuming a Bivens extension, what special factors, counseling, hesitation, would allow for that to be a new remedy, a new remedy. And here we are squarely, we're squarely in the first line. And for that, Egbert says nothing. Egbert does not have anything to say because it wasn't an issue because the Ninth Circuit did not raise it. I do hear what you're saying about that. But the district court, I think, am I remembering this right, did go on to say, even if this is an extension, I don't see special factors, counseling, hesitation. And would you agree that Egbert does affect the step two analysis? So, Egbert has two holdings on the special factors analysis. And it says this catch all of, you know, if there's any reason to think that Congress is better situated, then you've got to go with Congress. So, that is Egbert's holding on special factors. And I would submit that that holding still has no impact on our case. The two special factors that Egbert focuses on are immigration, national security, border patrol, not relevant in our case. The second one is alternative remedies. Again, we've got the only alternative remedy here is a secret service inquiry into, you know, whether or not Agent Hicks, you know, performed it poorly in the line of duty. That's nowhere close to what Egbert had, which is a grievance process, you know, years, you know, years of inquiry in there. That's just not what we have here, too. So, there's national security, there is the alternative policy. And then this language of, is Congress better suited to do it? Here, it's not, right? And this is what we talk about. I thought there was a strain somewhere in these cases, if there's any reason to think that Congress would decide that the Congress, rather than the courts, should resolve this. I'm not sure. I don't think that an inter-agency conflict. I know that there's people, the players are from different agencies, right? Yes, the players are from different agencies, Your Honor. And so, maybe the federal government has a right to sort that all out. I think it will, with whatever remedies it chooses to provide. Yes, Your Honor. If this case was brought and somehow Mr. Hicks' identity as a Secret Service agent was part of his claim, I would agree with you. But here, it was his ordinary citizen's rights. And I cannot emphasize this enough. If he had ordinary citizen's rights and his case is taken away from him, because of his identity as a federal employee, that would be a strand of case law that certainly has not been seen either in the circuit or by the Supreme Court. I don't think that's right. I mean, there are plenty of things that we can't do that you can do. I mean, you know, like, share our opinions with people. I mean, that's not true, but I take your point here. Yes, Your Honor. And my point is that, you know, when you walk out this door, you still have your ordinary citizen Fourth Amendment rights. And the suggestion here would be that you would not be able to assert your Fourth Amendment's ordinary citizen's rights by virtue of the fact that he was employed by the Secret Service. I am very out of time, and I'm happy to answer questions on any of the other issues, or if Your Honors have any other questions for me. Judge Keenan, do you have any questions? No, thank you. Thank you. Thank you very much. All right. Thank you, Your Honors. First, Judge Monson, administrative issue. I didn't give you the pinpoint site of our Rule 50 argument. It was Joint Appendix 319. So that's the part of the Joint Appendix where I make the Rule 50 argument on Abbasi, or at least began it, for Judge Grimm. I do want to address a couple of points that came up in my learned colleague's argument. One, with regard to the issue of the hats that Agent Hicks may have worn at every one time. Certainly within the Bivens context, he's bringing this not in his official capacity. He's bringing it as an individual. But as I mentioned in our main argument, he actually wore both hats when he amended his complaint, because you don't get to a 1985 cause of action unless you're also a U.S. Secret Service agent. That's just one of those issues that I think creates a very different, unique circumstances that could potentially be a new context. Another new context, another stark one beyond the privacy issues, and it goes into this as well, is there's no search here. There was very clearly a seizure and a search in Bivens. There is no search here. He himself was never searched, he being Agent Hicks. I don't see why that's a good fact for you, because if there was no search, I don't know why different privacy levels in the home and in the car make any difference. Those only go to your search rights. I think if there had been a search, and he was alleging a search, yes, the laws to searches in cars is very different than the laws to searches in homes. I understand your point, Judge Harris, and I think that the broader picture, though, involved is the entire palby of Fourth Amendment rights that Agent Hicks had at that time are starkly different. I don't think there can be any dispute about that, search or not. The fact that there's a different right as to searches, if there was no search, seems irrelevant. There was no search here, and there was in Bivens, and in the context of the Abassi analysis, that is, we believe, the crux of the issue. They're just completely different factual circumstances. Mr. Parent, they were a seizure of the person illegally, were they not in both cases? Well, certainly, with Webster Bivens, he was certainly seized. He got removed. But it was in the case of Officer Hicks, too. He was illegally seized, not at the inception, when they made the welfare check, but once they knew he was a Secret Service agent, and then they go call the supervisor and detain him for another hour, not allowing him to get out of the vehicle. Why isn't that an unlawful seizure? And again, it comes down to degree of intrusion. You seem to be suggesting, and I raised this question in the previous case, that the degree of intrusion makes a difference. In other words, because he wasn't searched, he was only illegally detained, then it's not a Bivens case. Well, where is the authority in the Bivens line of cases that say a lesser degree of intrusion creates a new factual context? I will cite again to the Mejia v. Miller case, which I understand is more instructive. It's not key. I'm going to read this portion that I think, Judge Keenan, goes right to your case. More importantly, unlike Bivens, none of the events in question occurred in or near Mejia's home. The entire incident occurred on public lands managed by BLM and the National Park Service, a place where Mejia had no expectation of privacy. In Bivens, the unreasonable government intrusion occurred in his home. In short, Mejia's claim presents a new context. And given this new For example, a Fourth Amendment excessive force claims against BLM officers would have system-wide consequences for BLM's mandate to maintain order on federal lands, and uncertainty about these consequences provides a reason not to imply such a cause of action. And this cites Egbert at 1803 and 1804. And to sort of piggyback off of this claim with something that my counsel said in terms of the potential risk of how this could affect Bivens cases going forward. If this decision was allowed to be sustained and affirmed today, it could potentially open up Bivens' claims to welfare checks on the side of the road and ordinary Terry stops. That is in direct contradiction to what the line of the case is beginning with Abbasi and then with Hernandez and then Egbert have been counseling against. And I do totally understand that. But boy, the facts in this case are extremely unusual. And I mean, I hope, and I'm sure you're not And I guess I have sort of a competing concern. Like for now, Bivens is good law and overturning this verdict and saying when this happens to people, they are detained for no reason, haunted, humiliated, frightened for an hour. You finally let them go. And then someone thinks it's funny to pull them over and do it again. And if we now, while Bivens is good law have to say, oh no, that's fine. That's good. There's no cause of action for that. I mean, I worry about the consequences of that as well. I understand. And I, I, first I would say this, the fourth circuit's case in bibs actually has similar facts where there was taunting involved. And in that case, they found that Bivens could not lie. And I understand judge Harris, your concerns, but it does not. I understand. But the end of the day is whether or not, whatever it is, the appellants did, does it give rise to a cause of action under Bivens? Is Bivens the cause of action that he can get redressed from? Not an alternative remedy like 1985 plan he brought, not some kind of remedy. There was actually an inquiry done within secret service. Agent Rattay testified to that where he met with an agent Christopher to figure out if they did a fact finding mission, which indicates that at least within secret service, they looked at this. So I think given that, and I see that my time is up. I could briefly conclude unless the panel has any more questions. Given all that, given the uniqueness of this situation, that it does provide in our estimation, a new context, and that there are several significant special factors that counsel, again, notwithstanding the jury verdict, the facts in this case bring Bivens into a new context that could have system-wide consequences for law enforcement. We respectfully request the panel reverse. Thank you very much for your time. Much appreciated. Thank you both very much. We appreciate the assistance with this case. We are sorry, we can't come down and shake hands, but we wish you the very best.
judges: Pamela A. Harris, Diana Gribbon Motz, Barbara Milano Keenan